# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 5516 | DATE | 5/31/2001 |
| CASE TITLE | JEFFREY LANG vs. WINSTON & WINSTON, P.C. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' motion for class certification is granted and defendant's motion to dismiss is denied. Status hearing set for 6/13/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 04 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | FILED FOR DOCKETING 01 JUN -1 AM 11:54 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY LANG, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 00 C 5516 |
| ) | Paul E. Plunkett, Senior Judge |
| WINSTON & WINSTON, P.C., ) ) | |
| Defendant. ) | |

DOCKETED
JUN 0 4 2001

## MEMORANDUM OPINION AND ORDER

Jeffrey Lang has sued defendant on his own behalf and on behalf of all others similarly situated, for its alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"). The case is before the Court on plaintiff's Federal Rule of Civil Procedure ("Rule") 23 motion for class certification and defendant's Rule 12(b)(6) motion to dismiss. For the reasons set forth below, the motion for class certification is granted and the motion to dismiss is denied.

### Facts

Sometime before October 15, 1999, Jeffrey Lang purchased books for personal and family purposes from Prentice Hall. (Am. Compl. ¶ 7.) Either Lang failed to pay for the books or Prentice Hall failed to record his payment because Lang received a collection letter from defendant dated October 15, 1999. The letter was on defendant's letterhead and said, among other things: "Our client acted in good faith by delivering and performing their agreement. Since you have failed to

respond to previous requests for payment, your delinquent account was referred to this law firm." (Id. ¶ 8b, c.) Though the letter is "from" the law firm, Lang contends that no attorney reviewed his file, made a determination about the validity of his alleged debt, or reviewed the letter before it was sent to him. (Id. ¶¶ 14, 15.) Rather, Lang alleges, the letter he received was generated by a computer program that inserts information provided by the creditor, like the name of the debtor and the amount of the debt, into pre-determined fields in a form letter. (Id. ¶¶ 12-13.) Lang alleges that this letter, and the thousands of others like it that defendant sends out each year, falsely implies that "an attorney is meaningfully involved in collecting on [the] account," a violation of the FDCPA. (Id. ¶ 17.) Lang sues on behalf of himself and all other consumers who received such letters from defendant within the last year.

## Class Certification

### The Legal Standard

When evaluating a motion for class certification, we do not determine the merits of the case. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). Rather, we accept the allegations of the complaint as true and do not look beyond the pleadings unless it is necessary to do so to determine if the Rule 23 requirements have been met. General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982). The burden of showing that certification is appropriate rests with the plaintiff. Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993) [hereafter "RCPA"].

## Discussion

Class certification is only appropriate if all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b) have been met. FED. R. CIV. P. 23(b); Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992). Under Rule 23(a), a class can be certified only if: (1) it is "so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(1)-(4). Rule 23(b) is satisfied if: the prosecution of separate suits by individual class members would create the risk of inconsistent adjudications or would dispose of or impair the interests of third-parties; "the party opposing the class has acted or refused to act on grounds generally applicable to the class"; or the common questions of law or fact predominate over any questions that affect only individual class members and a class action is superior to other available methods of adjudicating the dispute. FED. R. CIV. P. 23(b)(1)-(3).

Plaintiff alleges that the defendant law firm violated the FDCPA by sending out thousands of debt collection form letters on its letterhead that "deceptively purport[] to be 'from an attorney,'" though "[n]o attorney reviews the file, makes determinations about the legal validity of the debt before the letters are sent, or interacts with the consumer." (Am. Compl. ¶ 15.) Plaintiff defines the putative class as all individuals who, according to defendant's records, reside in Illinois and were sent, within a year prior to the filing of this suit, a letter on defendant's letterhead that said a delinquent account had been referred to the law firm for collection, provided the letter was not returned undelivered by the postal service. (Id. ¶ 13.)

The FDCPA defines debt as an obligation of a natural person arising out of, among other things, a purchase made "primarily for personal, family or household purposes." 15 U.S.C. § 1692a(3), (5). Defendant argues that this case is unsuitable for class treatment because it will be difficult to determine which of the putative class members incurred the obligations that defendant sought to collect for personal, rather than professional or business purposes. Because, defendant says, its records do not reveal which individuals made purchases primarily for personal use, it is impossible to tell whether the proposed class meets any of the requirements of Rule 23(a).

We disagree. As one of our colleagues observed: "The need to show that the transactions involved . . . are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under FDCPA." Wilborn v. Dun & Bradstreet Corp., 180 F.R.D. 347, 357 (N.D. Ill. 1998). Whether each individual who was sent a collection letter by defendant used the product or service purchased primarily for personal purposes, in other words, whether each class member has a viable FDCPA claim, can be explored during discovery. At this stage, it is sufficient if the proposed class is defined to exclude commercial purchasers and individuals who, as indicated by defendant's records or the records of the creditors for whom the letters were sent, made purchases primarily for business use. Id.; cf. Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) (noting that "commercial purchases [are] frequently . . . readily identified by the listing of the name of the business as the purchaser.") To achieve that goal, the proposed class definition should be amended as follows: all individuals who, according to defendant's records or the records of the creditors who employed defendant's services: (a) reside in Illinois, (b) made a purchase of goods or services in their own name, (c) for which defendant attempted to collect by sending a letter on its letterhead to their residence that said

a delinquent account had been referred to the law firm for collection (d) within a year prior to the filing of this suit (e) provided the letter was not returned undelivered by the postal service.

Amendment would not, however, cure the other problem noted by defendant, that the very nature of Prentice Hall's business, the sale of business-related books, makes it unlikely that any putative class member's debt arose from a purchase for personal use. But that "problem" is largely illusory. First, contrary to defendant's belief, plaintiff is not seeking to certify a class of all Prentice Hall customers to whom defendant sent collection letters, but a class of *all* consumers to whom defendant sent collection letters, regardless of the creditor on whose behalf the letters were sent. Thus, if the proposed class otherwise meets the requirements of Rule 23, certification would be appropriate even if plaintiff were the only Prentice Hall customer from whom defendant tried to collect who purchased one of its books primarily for personal use. Second, even if Prentice Hall were the only creditor implicated by the proposed class definition, the fact that it publishes books that are useful for business does not establish that its customers purchased those books primarily for business use. Indeed, the allegations of the amended complaint refute this notion, as plaintiff alleges he purchased for personal use a Prentice Hall book that defendant claims is designed for business. (Am. Compl. ¶ 7.) In any event, as we noted above, the primary purpose issue goes to the viability of the putative class members' claims, not the propriety of class certification. Any putative class member who, discovery reveals, did not incur a "debt" within the meaning of the FDCPA will be excluded from the class.

Having dispatched defendant's general objections, we turn now to the specific requirements of Rule 23(a). The first is numerosity, which requires that the proposed class be so large that joinder of all of its members is impracticable. FED. R. CIV. P. 23(a)(1). Though plaintiff cannot rely on

conclusory allegations or speculation that joinder is impracticable, he also need not allege the exact number of class members to satisfy this requirement. Rather, a good faith estimate will suffice. Allen v. Chicago Transit Auth., No. 99 C 7614, 2000 WL 1207408, at *7 (N.D. Ill. July 31, 2000). Lenient as that standard is, however, plaintiff's bare allegation that defendant sends out "thousands, if not tens of thousands of [form collection] letters" each year does not satisfy it. (Am. Compl. ¶ 11.) Because defendant sends collection letters to institutions and businesses as well as individuals, (see Def.'s Mem. Opp'n Mot. Class Certification at 7), plaintiff's estimate of the total number of letters defendant sends out each year does not establish that the consumer class he seeks to certify is too numerous for joinder.

Fortunately for plaintiff, however, defendant has supplied the necessary information. Defendant estimates that it sent about 660 letters to individuals in Illinois on behalf of Prentice Hall during the relevant time period. (Id.) Because Prentice Hall is only one of the creditors for whom defendant worked, 660 would be the minimum number of class members. Though we may consider other factors in making the numerosity determination, on sheer numbers alone this proposed class is too numerous practicably to join.

The next two requirements, commonality and typicality, are closely related. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement . . . ." Rosario, 963 F.2d at 1018. Typicality is satisfied if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." Id. (internal quotation marks and citation omitted). Lang's claim and those of the putative class members arise from the same practice, defendant's dispatch of form debt collection letters on its letterhead without any meaningful attorney involvement in the process,

and are based on the same legal theory, that these letters deceptively purport to be from an attorney in violation of the FDCPA.

Even so, defendant contends that commonality and typicality are absent because it sends different versions of its collection letter out on behalf of different clients. All Prentice Hall customers received the same letter, defendant says, but it sent different versions of the letter to customers of its other clients. Even if that is true, it does not change the class certification analysis. Plaintiff does not allege that the language defendant uses in its collection letters violates the FDCPA. Rather, he claims that defendant's practice of sending the letters out on its letterhead without attorney review violates the statute. Thus, even if there is some variety in the language of the letters defendant sends out pursuant to this alleged practice, that fact would not preclude class certification.

The final requirement of Rule 23(a) is that the named plaintiff fairly and adequately represent the interests of the putative class members. The named plaintiff is an adequate representative if he does not have claims antagonistic to the class; and (2) he has adequate counsel. RCPA, 7 F.3d at 598. Defendants do not quarrel with the adequacy of plaintiff's counsel, but contend that plaintiff has interests antagonistic to the class because Prentice Hall's records show that the letters on which this suit is based were sent to Jeffrey Lang, Sr. not Jeffery Lang, the named plaintiff in this suit. Plaintiff says that he is Jeffrey Lang, Sr., the recipient of defendant's letters, but inadvertently omitted the designation "Sr." from his complaint. Because the "conflict" this error creates can be cured through a simple amendment of the complaint, it does not preclude certification.

Defendant also contends that Lang is not an adequate class representative because he has not alleged that he used the book he purchased primarily for personal, family or household purposes. Defendant is mistaken. In the amended complaint, plaintiff alleges that defendant "undertook to

collect a debt from Plaintiff, on behalf of Prentice Hall, in connection with books purchased for personal and family purposes." (Am. Compl. ¶ 7.) Because plaintiff has affirmatively alleged that the money defendant sought to collect from him was a debt within the meaning of the FDCPA, he can adequately represent the members of the consumer class he seeks to certify.

We turn now to the requirements of Rule 23(b). Plaintiff contends that certification is appropriate under that Rule 23(b)(3) because the questions of law and fact common to the class predominate over individual issues and class action is a superior method of adjudicating this dispute. We agree. The common issues are whether defendant engaged in the practice alleged by plaintiff and whether a reasonable unsophisticated consumer would believe that defendants' letters are "from an attorney" in a meaningful sense. The only individual issue is whether the class members used the product or service from which the debt arose primarily for personal, family or household purposes. That question that can be answered from defendant's records or those of the creditors for whom it works or from a simple set of interrogatories directed to each class member.[1] In short, the first requirement of Rule 23(b)(3) is met.

Defendant contends that plaintiff has not satisfied the second requirement, however, because a class action is not the best method for adjudicating the claims in this suit. Plaintiff seeks only

---

[1] Unlike defendant, we do not believe that identifying those class members who incurred a "debt" within the meaning of the FDCPA will be a herculean task. The amended class definition excludes corporate entities and individuals who purchased in their own name but used a non-residential address. Thus, defendant's only task is to determine which of the putative class members, that is, individuals who made purchases in their own name and used a residential address, made the purchase primarily for personal, family or household purposes. Defendant identifies the issues pertinent to that inquiry (i.e., whether the individual paid for the purchase with personal funds, was reimbursed for the purchase by a business, keeps the book at his place of business, etc.) in its brief. (See Def.'s Mem. Opp'n Pl.'s Mot. Class Certification at 3-4.) Having identified the relevant questions, defendant should be able to craft a set of interrogatories on this issue without great difficulty.

statutory damages, which for the putative class members is an amount "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). Defendant claims that it has a negative net worth. Thus, it concludes, the class members, who could each recover $1,000.00 if they sued individually (see 15 U.S.C. § 1692k(a)(2)(A)), will recover nothing if their claims are pursued as a class action.

If defendant's net worth were indeed zero, it might be inappropriate to certify a class under Rule 23(b)(3). But defendant has not shown that it is. According to the accountants' compilation report that accompanies defendant's financial statement, the statement is probably not an accurate picture of defendant's financial health:

> Management has elected to omit substantially all of the disclosures, as well as the statement of cash flows, required by generally accepted accounting principles. If the omitted disclosures and statement of cash flows were included in the financial statements, they might influence the user's conclusions about the Company's financial position, results of operations, and changes in cash flows. Accordingly, this financial statement is not designed for those who are not informed about such matters.

(Def.'s Mem. Opp'n Pl.'s Mot. Class Certification, Ex. H.) Because there is nothing in the record from which we can conclude that the class members will recover nothing from defendant, its alleged financial condition will not preclude class certification if that method of adjudication is otherwise superior to individual suits.

We find that it is. Because the potential recovery on FDCPA claims is quite small, few plaintiffs are willing to devote the considerable time and money that an individual action requires to vindicate their rights.[2] Thus, absent a class action, many meritorious FDCPA claims may go

---

[2]To the extent any particular class member believes that he would be better served by filing an individual action, he can opt-out of the class pursuant to Rule 23(c)(2).

unredressed and defendant's allegedly unlawful practice will continue unabated. Moreover, a class action furthers the interest of judicial economy by adjudicating in one forum the common questions that arise from defendant's allegedly uniform treatment of the putative class. Finally, this case, which raises issues that are neither novel nor complex, does not appear to present any unique management problems that would militate against certifying the class. For all of these reasons, the Court finds that a class action suit is superior to other methods that are available to adjudicate these claims, and thus, that Rule 23(b)(3) is met.

In sum, plaintiff has sustained his burden of proving that all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b) are met. Thus, his motion for class certification is granted.

**Motion to Dismiss**

**The Legal Standard**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**Discussion**

Plaintiffs' claims are based on the Seventh Circuit's opinion in Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996). In Avila, the plaintiff sued, among others, a lawyer from whom he had received

three letters attempting to collect a debt. Rubin, the lawyer defendant, approved the general form of the collection letter but did not "personally prepare, sign, or review any of the letters [that were] sent." Id. at 225. Rubin's letters were actually the product of a nonattorney "who direct[ed] the computer to generate a letter on Rubin's attorney letterhead." Id. Avila claimed that the letters from Rubin violated the FDCPA because they created the false impression that they were actually from an attorney.

The Seventh Circuit agreed. In its view:

> [A]n attorney sending dunning letters must be directly and personally involved in the mailing of letters in order to comply with the strictures of FDCPA. This may include reviewing the file of individual debtors to determine if and when a letter should be sent or approving the sending of letters based on the recommendations of others.

Id. at 228. Rubin, the district court found, did not "review the debtor's file; . . . determine when particular letters should be sent; . . . approve the sending of letters based upon the recommendations of others; . . . see particular letters before they were sent; [or] . . . even know the identities of the debtors to whom the letters were sent." Id. at 228-29. Given these facts, the Avila court concluded that Rubin had violated the FDCPA "because his collection letters create[d] the false and misleading impression that the communications were from an attorney when, in fact, they were really not 'from' an attorney in any meaningful sense of the word." Id. at 229.

Plaintiffs' allegations are virtually identical to the facts of Avila. Plaintiffs allege that defendant sends out thousands of collection letters like the one sent to Lang without conducting "a meaningful attorney review of the accounts." (Am. Compl. ¶¶ 9, 11.) They also say that the letters defendant sends out are produced by a computer program that inserts information given to defendant by its creditor clients into pre-defined fields in a form letter. (Id. ¶¶ 12-13.) Plaintiffs allege that "no attorney reviews or authorizes any particular letter before it is sent. Rather, the only attorney

-11-

involvement is to review the form of the letter sent and to define some general parameters as to the intended recipients." (Id. ¶ 14.) They further allege that "[n]o attorney reviews the file, makes determinations about the legal validity of the debt before the letters are sent, or interacts with the consumer." (Id. ¶ 15.) These allegations state an FDCPA claim under Avila.

Defendant says that Avila is distinguishable because the attorney in that case collected debts for a collection agency in which he owned a controlling interest while defendant collects debts on behalf of creditors with whom it has an arms-length business relationship. That distinction, though accurate, is irrelevant. Though the Avila court noted the "cozy relationship" between the attorney and the collection agency, that fact was not critical to its holding. Avila, 84 F.3d at 228. The attorney violated the FDCPA, the court said, not because he was too closely related to the collection agency, but because he was not "directly and personally involved in the mailing of the letters." Id. Thus, the fact that defendant does not own or control the entities that hire it to collect debts does not place its alleged conduct outside the reach of Avila. (But see Def.'s Mem. Supp. Mot. Dismiss, Ex. C, Kartavich v. Winston & Morrone, No. 96-C-08993-S at 7 (W.D. Wis. Feb. 19, 1997) (dismissing FDCPA complaint against attorney and law firm because they were "acting in [those] capacities rather than as representatives of [an unidentified] debt collection agency in sending the relevant debt collection letter to plaintiff.").)

In defendant's view, plaintiffs' real complaint is that no lawyer personally reviewed every debtor's file, a requirement that neither Avila nor any other case interpreting the FDCPA has imposed. Plaintiffs, apparently, agree. (See Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 6.) But that is not what they allege. Rather, plaintiffs allege that defendant's attorneys had no substantive involvement *of any kind* in the debt collection process initiated by the firm – no file review, no

-12-

review or authorization of any particular letter, no determination of the validity of the debt, no exercise of independent judgement at all – allegations which, the <u>Avila</u> court held, state a viable FDCPA claim.

The cases defendant cites to support its position do not dictate a different result. In <u>Goldberg v. Winston & Morrone, P.C.</u>, No. 95 Civ. 9282, 1997 WL 139526 (S.D.N.Y. Mar. 26, 1997), for example, the court denied summary judgment on an FDCPA claim because there was evidence to suggest that the defendant law firm and lawyer: "(1) verified [the creditor's] debt collection procedures, (2) created the collection letters, (3) decided when and which letters were to be sent and to whom, [and] (4) reviewed hard copies of the information [the creditor] provided on each debtor." <u>Id.</u> at *5. "These claims, if credited," the court said, "might justify defendants' representations that the letters in question 'were from an attorney.'" <u>Id.</u> This case, by contrast, is before the Court on a motion to dismiss. Thus we must accept as true plaintiffs' allegations that defendant reviewed neither the debtors' files nor the collection letters it sent out, allegations that state an FDCPA claim under <u>Avila</u>.

<u>Anthes v. Transworld Sys., Inc.</u>, 765 F. Supp. 162 (D. Del. 1991) is also distinguishable. The plaintiff in <u>Anthes</u> claimed that the lawyer who had sent her a collection letter was "nothing more than a 'mailing service' for [the collection agency]." <u>Id.</u> at 166. The court disagreed, in part because the lawyer determined independently, based on the information provided to him by the collection agency, "whether one of his letters should be sent." <u>Id.</u>; (<u>See</u> Def.'s Mem. Supp. Mot. Dismiss, Ex. E, 1/28/00 Min. Order, <u>Hohmann v. Winston & Winston, P.C.</u>, No. 99 C 2744 (dismissing FDCPA claim, with leave to amend, because allegation that defendants "'controlled, designed, directed, and oversaw the debt-collection practices'" contradicted general allegation that defendants had no

meaningful involvement in the debt collection process).) In this case, by contrast, plaintiffs allege that defendant exercised no independent judgement to determine whether any letter should be sent. Defendant's motion to dismiss the FDCPA claims asserted against it is denied.

Finally, defendant asks that the Court dismiss any claims plaintiffs assert against Arthur Winston and Jay Winston, individually. This request is based on the "Wherefore" clause of the amended complaint, which asks for relief from these individuals, though they are not listed as parties and have not been served with a summons in this action. Plaintiffs admit that those individuals are not parties and say that their inclusion in the amended complaint was an editing error. Because plaintiffs do not assert any claims against the Winstons individually, defendant's motion to dismiss such claims is denied as moot.

## Conclusion

For the reasons set forth above, plaintiffs' motion for class certification is granted and defendant's motion to dismiss is denied.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 5-31-01